IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Criminal Action No. **3:19-CR-444-L** |
| | § | |
| KENDRICK MARCEL OVERTON | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion to Suppress Evidence (Doc. 20), filed by Defendant Kendrick Marcel Overton on May 15, 2020. After carefully considering the motion, response, reply, evidence, and applicable law, the court **denies** Defendant's Motion to Suppress Evidence (Doc. 20).

**I.   Factual and Procedural Background**

On March 22, 2019, at approximately 1:49 a.m., Kendrick Marcel Overton ("Mr. Overton") was stopped by Mesquite Police Officers Odom ("Officer Odom"), Parker ("Officer Parker"), and Zimmerman ("Officer Zimmerman") for riding his bicycle at night without the proper lighting equipment. Officer Zimmerman observed Mr. Overton riding his bicycle along Town East Boulevard, crossing Viva Drive and then Catalina Drive. Officer Zimmerman's In-Car Video, Gov't Ex. 2 at 00:45-00:55 seconds.[1]  Officer Zimmerman approached Mr. Overton, informed him of the reason for the stop, began to question him about where he was headed, asked what he was doing on a bicycle at night without the proper lighting equipment. Officer Zimmerman's Body Camera Footage, Gov't Ex. 3 at 00:26-01:10. Mr. Overton replied to each of Officer Zimmerman's questions. *Id.* While they were talking, Mr. Overton was sitting upright on his bicycle, looking

---

[1] Officer Zimmerman's vehicle was equipped with an in-car recording device, and he was wearing a body camera, both of which recorded footage of the traffic stop with clear video and sound. Doc. 22 at 1. The parties do not dispute the accuracy of these recordings.

straight at Officer Zimmerman or towards Town East Boulevard, holding his left arm stiffly along his torso. *Id.*

When Officer Zimmerman asked Mr. Overton whether he had any weapons in his possession, Mr. Overton replied, "Uhm … no." Gov't Ex. 3 at 01:10-01:16. Simultaneously, he looked down towards his waistband, then became still. *Id.* Upon observing Mr. Overton's glance toward his waistband, Officer Zimmerman informed him that he was going to search his person for officer safety to make sure he did not have any weapons. *Id.* Officer Zimmerman then conducted a *Terry*[2] frisk and discovered a firearm in the inside pocket of Mr. Overton's jacket. *Id.*

After discovery of the weapon, Officer Zimmerman placed Mr. Overton in handcuffs and informed him that he was being detained for officer safety. Gov't Ex. 3 at 01:22. Officer Zimmerman unzipped Mr. Overton's jacket to retrieve the weapon from an interior pocket at the front, bottom left side of the jacket. *Id.* at 01:50. While searching Mr. Overton's jacket for the weapon, Officer Zimmerman noticed the smell of marijuana coming from Mr. Overton and asked him whether he was in possession of any marijuana, or whether he had smoked earlier. *Id.* at 02:03. Mr. Overton replied that he did not have any in his possession but that he had smoked earlier. *Id.* at 02:05. After retrieving the weapon from within Mr. Overton's jacket, Officer Zimmerman directed Mr. Overton to get off his bicycle and sit down on the curb. *Id.* at 02:43. Officer Zimmerman then returned to his vehicle to run a criminal history check.

Over the next few minutes, Officer Odom continued to smell marijuana coming from Mr. Overton and repeatedly asked him whether he was physically in possession of any marijuana, to which Mr. Overton replied in the negative. Officer Odom's Body Camera Footage, Gov't Ex. 4 at

---

[2] 392 U.S. 1 (1968).

**Memorandum Opinion and Order – Page 2**

02:30-11:00. Officer Odom conducted a search of Mr. Overton's person for marijuana possession and discovered a partially-used marijuana cigarette. *Id.* at 11:10-11:27.

The basis for this prosecution is the discovery of the firearm, as Mr. Overton has been indicted for Possession of a Firearm by a Prohibited Person, in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(2). In response to these charges, Mr. Overton filed a Motion to Suppress Evidence ("Motion") (Doc. 20) on May 15, 2020, contending the stop and subsequent search were a violation of his Fourth Amendment rights. Specifically, he asserts there was no indication that Officer Zimmerman had obtained or sought to obtain a warrant for seizure and search of Mr. Overton's person. Doc. 20 at 1. Mr. Overton also asserts that he has standing in this matter because he was the driver and sole occupant of his bicycle. *Id.* at 4. Citing precedent from the Fifth Circuit, Mr. Overton contends that once a defendant has shown standing and that the seizure or search was conducted without a warrant, the burden shifts to the Government to demonstrate that the warrantless search or seizure fell within an exception to the warrant requirement. *Id.* at 3. Accordingly, he contends that he is entitled to the suppression of all evidence resulting from the unwarranted search and seizure unless the government can justify its acquisition. *Id.*

In the Government's Response to the Defendant's Motion to Suppress ("Response") (Doc. 22), it argues that Mr. Overton's Motion should be denied. Specifically, the Government argues that Officer Zimmerman stopped Mr. Overton for a traffic violation that occurred within his view, and that both Texas and Federal law entitle an officer to arrest an individual without violating the Fourth Amendment for committing even a minor criminal offense in the officer's presence. Doc. 22 at 3. Further, the Government states that Officer Zimmerman was within his constitutional authority to pat down Defendant for personal safety because he had reasonable suspicion to believe Mr. Overton was armed and presented a danger to him and others within the vicinity. *Id*. at 4.

Because Officer Zimmerman smelled marijuana while conducting the pat-down search, the Government contends that even if Officer Zimmerman had not discovered the weapon, the officers would still have had probable cause to search Mr. Overton for possession of marijuana under the inevitable discovery exception. *Id.* at 5-6.

On June 18, 2020, Mr. Overton filed Defendant's Reply to Government's Response to Defendant's Motion to Suppress Evidence ("Reply") (Doc. 24), pursuant to the court's Order of June 11, 2020 (Doc. 23). Mr. Overton advances two main arguments in his Reply (Doc. 24). First, he asserts that the case law cited in the Government's Response is insufficient in this case to support a reasonable suspicion necessitating a frisk for officer safety. Doc. 24 at 4. Second, Mr. Overton argues that the inevitable discovery exception does not apply in this case because the officers did not notice the smell of marijuana from the beginning but rather after Mr. Overton's constitutional rights had already been allegedly violated during the *Terry* stop. *Id.* at 5.

## II. Discussion

The Fourth Amendment prohibits unreasonable searches and seizures. Specifically, the Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. IV. Searches are generally considered to be unreasonable unless they are accompanied by a warrant and probable cause. *See id*; *Horton v. California*, 496 U.S. 128, 133-34 & n.4 (1990); *Almeida-Sanchez v. United States*, 413 U.S. 266, 270 (1973). Probable cause is necessary to effect a warrantless arrest or a detention that is similarly intrusive. *Florida v. Royer*, 460 U.S. 491, 500 (1983). Seizures short of an arrest require reasonable suspicion. *Terry v. Ohio*, 392 U.S. 1, 27

(1968). The stop of a vehicle and detention of its occupants constitutes a "seizure" under the Fourth Amendment. *Id.* at 19 (recognizing that whenever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person); *see also United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc). Routine traffic stops, whether justified by probable cause or reasonable suspicion, are *Terry* stops. *See Brigham*, 382 F.3d at 506.

Challenges to traffic stops are analyzed under a two-step inquiry. *United States v. Bams*, 858 F.3d 937, 942 (5th Cir. 2017); *see also United States v. Andres*, 703 F.3d 828, 832 (5th Cir. 2013). The first step requires the district court to first determine "whether the stop was justified at its inception." *Bams*, 858 F.3d at 942. In other words, the first step is to determine whether the officer had an "objectively reasonable suspicion" that a traffic offense occurred or was occurring. *Id.* If the stop was justified, the next step is to determine "whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop of the vehicle in the first place." *Id.* (quoting *Andres*, 703 F.3d at 832).

    **A.**    **The Initial Stop was Justified.**

Under the first step, a traffic stop is justified at its inception if an officer has an objectively reasonable suspicion that a traffic violation occurred, or is about to occur, before stopping the vehicle. *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). In *Terry v. Ohio*, the Supreme Court held that an officer may conduct an investigatory detention and protective pat-down when he "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous." 392 U.S. at 30.

Probable cause is not a prerequisite for a brief investigative detention; however, the law enforcement officer must have "reasonable suspicion supported by articulable facts that criminal

activity 'may be afoot'" because the Fourth Amendment requires "some minimal level of objective justification" for making an investigative stop. *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citations omitted). Thus, the officer "must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." *Id.* (internal quotation marks omitted). "The government has the burden of proving the specific and articulable facts that support the reasonableness of the suspicion." *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014).

In cases where an investigatory detention is based on an officer's probable cause that the defendant violated a traffic law, courts apply "a version of *Terry* to determine whether the length and intensity of the detention was unreasonable, [but] the question of whether the initial traffic stop was constitutional is usually not at issue." *United States v. Monsivais*, 848 F.3d 353, 360 (5th Cir. 2017). Furthermore, the Texas Code of Criminal Procedure, Article 14.01(b), authorizes a law enforcement officer's authority to make a warrantless on-view arrest and states, "A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view." *See also Atwater v. City of Lago Vista*, 532 U.S. 318, 322 (2001) (confirming that an officer may arrest an individual without violating the Fourth Amendment if there is probable cause to believe that the offender has committed even a very minor criminal offense in the officer's presence). In evaluating the validity of a stop, courts consider "the totality of the circumstances." *Sokolow*, 490 U.S. at 8 (citations omitted).

Here, Mr. Overton contends that the Mesquite police officers in question seized and searched him without a warrant. Doc. 20 at 1. The Government contends, in their Response, that Officer Zimmerman saw Mr. Overton riding his bicycle at 1:49 a.m., crossing the street without the required lights on his bicycle and that both the alleged violation and the subsequent arrest were captured on Officer Zimmerman's in-car and body camera video. Doc. 22 at 1, 3; Gov't

Exs. 2, 3. Specifically, the Government contends that Mr. Overton's actions were a violation of Section 551.104(b) of the Texas Transportation Code, which prohibits a person from operating a bicycle at nighttime unless the bicycle is equipped with:

> (1) a lamp on the front of the bicycle that emits a white light visible from a distance of at least 500 feet in front of the bicycle; and
> (2) on the rear of the bicycle:
> > (A) a red reflector that is:
> > > (i) of a type approved by the department; and
> > > (ii) visible when directly in front of lawful upper beams of motor vehicle headlamps from all distances from 50 to 300 feet to the rear of the bicycle; or
> > (B) a lamp that emits a red light visible from a distance 500 feet to the rear of the bicycle.

Tex. Trans. Code § 551.104(b). According to both the in-car and body camera footage, it is clear to the court that Mr. Overton was riding his bicycle at night without the necessary equipment in violation of the Texas Transportation Code § 551.104(b). The parties do not dispute this fact. Thus, Officer Zimmerman had the authority to stop Mr. Overton, given his violation of a traffic law committed within view of the officer. Accordingly, the first step of the *Terry* evaluation is satisfied because the officer's action was justified at its inception.

### B.   In Light of the Circumstances, Officer Zimmerman Acted Reasonably.

In evaluating the second step of the analysis, the question becomes whether the officer's subsequent search was reasonably related in scope to the circumstances that justified the stop. *Brigham*, 382 F.3d at 506. To justify a pat-down search, police officers must have reason to believe that the individual being investigated is armed and dangerous. *Terry*, 392 U.S. at 27. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* (citations omitted). "[I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and

unparticularized suspicion or 'hunch,' but to the specific reasonable inferences [that] he is entitled to draw from the facts in light of his experience." *Id.* (citation omitted). "[E]vidence may not be introduced if it was discovered by means of a seizure and search which were not reasonably related in scope to the justification for their initiation." *Id.* at 29 (citation omitted).

The manner in which a law enforcement officer conducts a search and seizure is an important part of the court's analysis in determining whether they were justified at all. *Id.* at 28. "Traffic stops are 'especially fraught with danger to police officers,' so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely." *United States v. Portillo-Saravia*, 379 F. Supp. 3d 600, 613 (S.D. Tex. 2019) (quoting *Rodriguez v. United States*, 575 U.S. 348, 356 (2015)). The court goes on to "emphasize" that "the risk of a violent encounter in a traffic stop setting stems… from the fact that evidence of a more serious crime might be uncovered during the stop." *Maryland v. Wilson*, 519 U.S. 408, 414 (1997). As such, courts allow for wide discretion of what can contribute to the "specific reasonable inferences [that a police officer] is entitled to draw from the facts in light of his experience." *Portillo-Saravia*, 379 F. Supp. 3d at 613 (quoting *Rodriguez*, 575 U.S. at 356).

Because a pat-down is only justified to protect the police officer and others nearby, it must be "confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Terry*, 392 U.S. at 27. Thus, a pat-down must be strictly limited to what is minimally necessary to learn whether the persons being investigated are armed and to disarm them if weapons are discovered. *Id.* at 30. It is not an invitation to "conduct a general or exploratory search for whatever evidence of criminal activity [the officer] might find." *Id*. In considering these questions and in recognition that officers must "diligently pursue their investigation," the Supreme Court has held that a court "should not indulge

in unrealistic second-guessing." *Portillo-Saravia* 379 F. Supp. 3d at 615 (quoting *United States v. Sharpe*, 470 U.S. 675, 685-86 (1985)).

Courts have concluded that once a traffic stop has occurred, several factors can be considered to contribute to an officer's reasonable suspicion that a defendant may be armed or dangerous. These factors may include, but are not limited to: time of day, reputation of the geographical area, reputation of the person to be detained, furtive or evasive behavior, flight, confrontational or abrasive attitude and clothing. *See, e.g., Terry*, 392 U.S. at 27; *Rodriguez*, 575 U.S. at 356; *Illinois v. Wardlow*, 528 U.S. 119, 124-25 (2000); *United States v. Monsivais*, 848 F.3d 353, 358-59 (5th Cir. 2017); *U.S. v. Pack*, 612 F.3d 341, 360-61 (5th Cir. 2010). For example, in *United States v. Fishel*, 467 F.3d 855 (5th Cir. 2006), the defendant was observed committing a traffic violation, and, upon being pulled over by the officer, he displayed a number of extremely nervous tendencies and inconsistencies with his story. Considering the defendant's conduct and the circumstances surrounding the traffic violation, the Fifth Circuit ruled that the officer had a reasonable suspicion to search him. *See id.* at 857.

In *U.S. v. Jones*, the Fifth Circuit found it reasonable for a deputy sheriff to ask whether a defendant was carrying any weapons. 185 F.3d 459, 461-62 (5th Cir. 1999). When the defendant replied "no," the officer then asked if he could search the car. *Id.* The defendant consented to the search, but he also reacted by fidgeting, appearing nervous, sweating, and nearly collapsing. *Id.* On these grounds, the court determined that the deputy had reasonable suspicion to believe that the defendant was hiding contraband and to conduct a more thorough search of the vehicle. *Id.*

Courts have also concluded that many of these factors when taken alone, without other grounds for suspicion, would not be considered enough for reasonable suspicion. *See, e.g., Rodriguez*, 575 U.S. at 354-55; *Pack*, 612 F.3d at 350 (stating that nervousness is a pertinent but

not overriding factor for developing reasonable suspicion); *see also Wardlow*, 528 U.S. at 124; *Monsivais*, 848 F.3d at 357-63.

Here, the Government contends that, "while talking to Overton, Officer Zimmerman noticed two things: Overton's body language changed, and Overton smelled of marijuana." Doc. 22 at 3. The Government also asserts that Overton's demeanor and actions while Officer Zimmerman talked to him "led Officer Zimmerman to believe Overton may be armed." *Id.* at 4. Thus, the Government contends that Officer Zimmerman conducted a quick pat-down search for his safety. *Id.* It also states that Officer Zimmerman is willing to testify that he observed the following: (1) "Overton was riding his bike using both hands and bent over, but after he was stopped, his body language changed, and that his left arm appeared to be stiff against his body…"; (2) "While Overton used and moved his right arm, his left arm stayed straight"; (3) "When [Officer Zimmerman] asked if he had a gun, Overton looked down towards his waist." *Id.* Furthermore, it contends that Officer Zimmerman is willing to testify that these actions, based on his experience "led [him] to be concerned that Overton may be concealing a weapon." *Id.*

In Mr. Overton's Reply, he contends that Officer Zimmerman's body camera shows that he was "completely cooperative, alert, both of his hands were visible, he answered all of Officer Zimmerman's questions, and he never tried to flee or resist." Doc. 24 at 4. He further argues that the *Terry* frisk was invalid because he: (1) did not respond in an "evasive, uncooperative, or aggressive manner"; (2) took no action that was consistent with the drawing of a weapon; and (3) was not suspected of criminal activity that often involves weapons. *Id.*

While the Mr. Overton is correct that his conduct does not fall into one of these three categories, it does not mean that the *Terry* frisk was invalid. There is not an exhaustive list of circumstances considered sufficient to justify a *Terry* frisk, as a *Terry* frisk is valid so long as a

**Memorandum Opinion and Order – Page 10**

reasonably prudent person in the circumstances would be warranted in the belief that his or her safety or that of others was in danger. *Terry*, 392 U.S. at 27.

      In this case, the footage of Officer Zimmerman's body camera confirms his observations are an accurate depiction of what happened during the interaction between him and Mr. Overton in the moments following the traffic stop. *See* Gov't Ex. 3. In his body camera footage, Officer Zimmerman directly asked Mr. Overton whether or not he had any weapons, and Mr. Overton immediately looked at his waistband as if in response to that question. Gov't Ex. 3 at 01:10-01:16. Upon observing Mr. Overton's glance toward his waistband, Officer Zimmerman informed him that he was going to search his person for officer safety to make sure he did not have any weapons. *Id.* Officer Zimmerman then conducted a *Terry* frisk and discovered a firearm in the inside pocket of Mr. Overton's jacket. *Id.* After discovery of the weapon, Officer Zimmerman placed Mr. Overton in handcuffs, informing him that he was being detained for officer safety. *Id.* at 01:22. Officer Zimmerman unzipped Mr. Overton's jacket to retrieve the weapon from an interior pocket at the front, bottom left side of the jacket. *Id.* at 01:50.

      It is clear to the court that Mr. Overton's Fourth Amendment rights were not infringed upon by Officer Zimmerman's legal *Terry* stop and subsequent search. Thus, the court determines that Defendant's Motion to Suppress Evidence (Doc. 20) should be denied. Furthermore, the court need not address whether the marijuana discovered on Mr. Overton's person falls under the inevitable discovery exception, as the evidence was not seized unlawfully. The Texas Court of Criminal Appeals has repeatedly stated that once a bona fide stop or arrest has been made for a traffic offense, the officer may search the suspect for evidence of any other offense for which the officer unexpectedly acquires probable cause while investigating or questioning the suspect. *See Atwood v. State*, 509 S.W.2d 342, 344 (Tex. Crim. App. 1974). Here, Officer Zimmerman smelled

marijuana while conducting a pat-down of Defendant for officer safety. Both the initial stop and Officer Zimmerman's decision to pat down Mr. Overton were legal and justified. As such, Officer Zimmerman would have been justified in searching for the marijuana, even if he never discovered a weapon during the *Terry* frisk.

### III.    Conclusion

Having reviewed the parties' submissions, the applicable law, and the evidence submitted by the Government, the court **concludes** that the Government has satisfied its burden of proving the constitutionality of the search and seizure by a preponderance of the evidence. The court further **concludes** that it need not conduct an evidentiary hearing in this case, as there is no unresolved question of fact. Accordingly, the court **denies** Defendant's Motion to Suppress Evidence (Doc. 20).

**It is so ordered** this 12th day of August, 2020.

Sam A. Lindsay
United States District Judge